## NIELSON *v.* READ.*

*(District Court, E. D. Pennsylvania. May 19, 1882.)*

1. LIQUIDATED DAMAGES—CHARTER-PARTY.

Where the sum named is intelligently and unequivocally stated to be the ascertained or liquidated damages for the breach of a contract, and the language is not qualified or rendered doubtful by other expressions contained in the paper; and especially where the actual extent of damage is difficult of ascertainment, and the sum named is not very greatly in excess of the probable injury,—the amount will be treated as liquidated damages.

2. SAME—COMMISSIONS.

A charter provided that the cargo should be delivered to the consignees, " to whom the vessel is to be addressed inwards and outwards, paying a commission of 2½ per cent. on total amounts of freight; * * * the captain to employ charterers or their nominees, at ports of loading and discharge, for business, on usual terms; failing which they or their agents shall be at liberty to deduct from the freight the sum of 50 guineas liquidated damages." The captain did not employ the charterers for his outward business. *Held,* that the 2½ per cent. commission on the outward freight was incident to the employment

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

stipulated for, and therefore could not be recovered in addition to the damage for the loss of the employment. *Held, further,* that the 50 guineas were liquidated damages and not penalty, and could be deducted from the freight by the charterers.

Libel *in personam* by the master of a vessel against a charterer to recover a balance of freight alleged to be due. Respondents claimed a set-off. The testimony disclosed the following facts:

Respondents chartered the vessel to transport iron ore from Carthagena to New York, consigned to respondents. The charter-party stipulated that the ore should be delivered to the consignees, "to whom the vessel is to be addressed inwards and outwards, paying a commission of $2\frac{1}{2}$ per cent. on total amounts of freights; * * * the captain to employ charterers or their nominees, at ports of loading and discharge, for business, on usual terms; failing which they or their agents shall be at liberty to deduct from the freight the sum of 50 guineas liquidated damages." Upon the arrival of the vessel in New York she was boarded by the agent of the firm of brokers who had represented the vessel on previous voyages. The agent took the captain to the office of the latter firm, who, after looking at the charter, told the captain that they could not undertake his inward business, because that under the charter belonged to respondents; but that they would attend to his outward business. Neither they nor the captain at this time noticed that the vessel was addressed to respondents outwards as well as inwards. Subsequently, however, the captain called on respondents, and his attention was called to the stipulation for the outward business. Some conversation then occurred between the parties, but without definite result; the captain apparently not being satisfied that he was liable to commissions under that stipulation. Subsequently the captain visited respondents' office a number of times, but no arrangement was made with them for an outward charter, and eventually a charter was obtained for the vessel by the brokers on whom the captain had first called. There was evidence that at some time after the arrival of the vessel, whether before or after her outward charter did not clearly appear, the respondents' firm had gone into voluntary liquidation, one of the partners continuing the business under the old name. When the captain demanded from respondents the balance due for freight, the latter claimed that in consequence of his refusal to give them his outward business they were entitled to set off $75 for outward commissions, and $250 for the liquidated damages for violation of the charter. The captain denied all liability for such commissions or damages, claiming that he had given respondents an opportunity to obtain an outward charter, and that they had failed to do so. He then filed this libel, to which respondents filed an answer reasserting their claim for both commissions and damages, but offering to pay the balance of freight, less the damages alone, and also to pay the costs up to that time. This offer libellant declined.

With regard to the damage suffered by respondents by the loss of the outward business libellant claimed that it was only about $81, while respondents claimed that it amounted to about $114, besides a possible loss of $40 to $50 dispatch money, and the incidental advantage of securing a new client and extending their business.

*Walter George Smith* and *Francis Rawle*, for libellant.

*Charles Gibbons, Jr.*, for respondents.

BUTLER, D. J. The liability for freight is not denied; but the respondents claim a set-off, (1) of £4, 8, 8, consignee's inward commissions; (2) $148.70, vessel's bills paid; (3) $75, consignee's outward commissions, and (4) $250, damages for violation of contract,—respecting employment at New York. The first and second items are not disputed. The third cannot be allowed. These commissions would have accrued to respondents if they had been employed in New York, and again become consignees of the cargo. The provision, in effect, is that the consignees, to whom the vessel is to be addressed, inward and outward, shall be paid 2½ per cent. on amount of freight. The commissions involved were an incident of the employment stipulated for, in New York; and the loss is included in the consequences of libellant's failure to observe this stipulation,—if he did so fail. The only questions in the case, therefore, are: Did libellant fail in this respect? and, if he did, what sum should be paid as damages? That he did so fail I have no doubt. Having employed another, the burden is on him to show that respondents declined the service. The witness on whom he relies to prove this—(though interested to help him out, having been the runner, or drummer, of another firm, and having succeeded in capturing the business,)—very distinctly says that he secured the employment immediately upon the vessel's arrival, without consultation with respondents. When the respondents' office was subsequently visited it was on account of other business. It is quite clear they were afforded no opportunity to furnish the outward cargo. The master indeed seems entirely to have overlooked his obligation in this respect; and the witness, (who secured the business for his employers,) says he was unaware of the obligation. No change had occurred in the respondents' firm that justified the master's course. They could, and we must suppose would, have performed the service, if employed to do so. What compensation should they have for the loss of this employment? The contract says fifty guineas,—deducted from the freight. The libellant's position, that this is a "penalty," is unsound. The precise extent of injury likely to ensue from loss of such employment is difficult to ascertain; and the probable amount, looking at incidental disadvantages, is not very greatly in excess of the sum named. The parties have expressly stated it to be the amount which shall be paid, and have pointed out the manner of securing its payment. It is unnecessary to enter upon the learning respecting "liquidated

damages." Where the sum named is intelligently and unequivocally stated to be the ascertained or liquidated damages for breach of a contract, and the language is not qualified or rendered doubtful by other expressions contained in the paper,—and especially where the actual extent of damage is difficult of ascertainment, and the. sum named is not very greatly in excess of the probable injury, the amount will be treated as "liquidated damages." Such are the circumstances here; and the 50 guineas, in addition to the two undisputed sums before referred to, must be deducted from the freight. For the balance thus ascertained, less respondents' costs since filing his answer, the libellant will receive a decree, with costs to the date of filing answer. The respondents having tendered payment of the amount now found to be due, with costs at the time of making answer, should not only not be charged with costs since that time, but should be reimbursed what they have necessarily expended in making defence.